UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
═══════════════════════════════════════════════════

JIMMY B. HILL,

                    Plaintiff,


v.                                              5:11-cv-00026  NPM


MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,

                    Defendant.
----------------------------------------------------------------------------------------------------
APPEARANCES:                        OF COUNSEL:

Olinsky Law Group                   Howard D. Olinsky, Esq.
Attorney for Plaintiff
300 S. State Street
5th Floor, Suite 520
Syracuse, NY 13202


Social Security Administration      Jason P. Peck, Esq.
Attorney for Defendant
Office of Regional General Counsel
Region II
26 Federal Plaza - Room 3904
New York, NY 10278


NEAL P. McCURN, Senior District Court Judge

## MEMORANDUM - DECISION AND ORDER

          This action was filed by plaintiff Jimmy B. Hill ("plaintiff") pursuant to 42

U.S.C. § 405(g) to review the final determination of the Commissioner

("Commissioner") of the Social Security Administration ("SSA"), who denied his application for disability insurance benefits ("DIB") and Supplemental Security Income ("SSI").  Currently before the court is plaintiff's motion for judgment on the pleadings (Doc. No. 10) seeking reversal of the Commissioner's decision with a finding of disability, or in the alternative, an order of remand for a new hearing. Also before the court is the Commissioner's motion for judgment on the pleadings (Doc. No. 15) seeking affirmation of the Commissioner's findings.  For the reasons set forth below, the Commissioner's motion is granted, and plaintiff's motion is denied.

## I.      Procedural History and Facts

### A.      Procedural history

Plaintiff protectively filed applications for social security disability insurance benefits and supplemental security income on March 26, 2008, alleging disability beginning December 1, 2007 due to alleged impairments of: (1) depressive disorder; (2) back disorder; (3) learning disorder; (4) posttraumatic stress disorder ("PTSD"); (5) auditory and visual hallucinations; and (6) insomnia Tr.[1] 17, 44-50, 64-71, 343-62. His applications were initially denied on October 30, 2008. Tr. 31-32.  On September 2, 2008, plaintiff timely requested a hearing

---

[1]       References to the Administrative Transcript are denoted as "Tr. __".

with an administrative law judge. Tr. 33.  Plaintiff appeared and testified at a hearing held on August 6, 2009 in Syracuse, New York in which Administrative Law Judge Thomas P. Tielens ("the ALJ") presided. Tr. 32-57.  Plaintiff was represented by non-attorney representative, Angel Haynes of Central New York Legal Services.  The ALJ issued an unfavorable decision dated September 15, 2009.  Tr. 12-22.

On November 2, 2009, plaintiff requested review of the ALJ decision. Tr. 9. On April 23, 2010, the Appeals Council denied plaintiff's request for review. Tr. 5-7. Upon the denial, this civil action was filed.  Plaintiff retained his present counsel on July 8, 2010. Tr. 8.  On April 29, 2011, a fully favorable decision was made upon an application filed on May 21, 2010, finding plaintiff disabled as of September 12, 2009**.**  Therefore, the period at issue in this appeal is from December 1, 2007 to September 11, 2009.

B.    Facts

The following facts are taken from plaintiff's statement of the case and are supplemented as the court deems necessary.  The Commissioner incorporates plaintiff's facts in his brief, with the exception of any inferences or conclusions asserted by plaintiff, and provides additional facts from the record.

Having a date of birth of August 18, 1964, plaintiff was 42 years old on the

3

alleged onset date of December 1, 2007. He has education through the sixth grade[2] and an employment history as a cashier and dishwasher. Tr. 46. In 2000 to 2003, plaintiff worked as a dishwasher/cashier eight hours a day, five days a week, and earned $8.60 an hour.  Plaintiff was fired from that job for stealing stamps. Tr. 46, 147, 167, 349.  Plaintiff also earned $4600 in 2006 and $5000 in 2007, but testified that he did not remember what he did for these earnings, but stated that he had worked for a temp agency. Tr. 349.  His date last insured was December 31, 2010. Tr. 17, 49.

In his application for SSI, plaintiff claimed that he was disabled from depression, back pain, a learning disability and post-traumatic stress disorder ("PTSD"). Tr. 44-45; 64.  Plaintiff indicated that he first used alcohol and marijuana at around fifteen years old and cocaine at around eighteen years old. Tr. 78.  He testified that the longest he had abstained from alcohol and drugs was the eight months that he was incarcerated in 2005 for grand larceny. Tr. 147, 350, 356-58.  Plaintiff testified that had previously been imprisoned in the 1980s for selling crack cocaine. Tr. 350.  Plaintiff stated that he relapsed and last used crack or alcohol a few days prior to the hearing because he was upset that his cousin was

---

[2] Plaintiff has reported various education levels throughout the record.  In the medical records from Central New York Services, Continuing Day Treatment Program, plaintiff reported that he had completed the ninth grade. Tr. 81.

shot in the neck. Tr. 351. He also testified that he used alcohol and drugs a few weeks prior to that incident. Tr. 351, 355-56.  Plaintiff testified that his friends gave him the $700 to $800 a month he spent on drugs, which, upon questioning by the ALJ, he admitted was odd. Tr. 357-58.

On May 14, 2001, plaintiff treated at Community General Hospital emergency department for right-sided low back pain, and Karen E. Sebastian, M.D. noted previous back problems. Tr. 262.  Medication of Flexeril, Motrin, and Tylenol with Codeine was prescribed, and plaintiff was put on bed rest for a few days. Tr. 262.  Plaintiff was restricted from heavy lifting and frequent bending, and Dr. Sebastian provided a note for plaintiff's employer. Tr. 262.  Plaintiff was admitted into Community General Hospital on June 5, 2001 for cervical spine and lumbosacral spine injuries and pain resulting from a motor vehicle accident two days prior. Tr. 268. Symptoms included worsening headache, neck pain, and lower back pain. Tr. 270. Low back had spasm of the left paravertebral muscles. Tr. 270. Diagnoses included: (1) rule out acute cervical spine or lumbar spine injuries; (2) rule out fractures; (3) rule out subluxation; and (4) rule out spondylolysis or spondylolisthesis. Tr. 270.  An x-ray of the lumbosacral spine revealed degenerative disease at L3-4 and L4-5 and possible muscle spasm. Tr. 271, 274. Plaintiff was taken out of work until June 11, 2001 by Edmund Dorazio, M.D. and

restricted from "heavy lifting" or bending. Tr. 271.  On January 23, 2002, plaintiff

treated at Community General Hospital emergency department for low back pain

and was prescribed Motrin and Lortab. Tr. 278. Plaintiff was removed from work

for two days and referred to Dr. Shik. Tr. 282. Plaintiff was treated on May 9,

2002 for acute lumbar sprain and lumbar sprain. Tr. 384. Plaintiff had muscle

spasm in the lower lumbar spine, and was prescribed Flexeril and Lortab. Tr. 282.

Plaintiff was restricted from heavy work. Tr. 289. Plaintiff was treated for an acute

lumbar sprain on April 9, 2004 and had discomfort of the lower lumbar spine to

the right of the midline. Tr. 291. Medication of Motrin and Flexeril was

prescribed. Tr. 292. Plaintiff was restricted from "heavy" work. Tr. 296.

On July 13, 2004, Dorothy Lennon, M.D. of Syracuse Behavioral Health

treated plaintiff for cocaine and marijuana dependence and administered an

evaluation. Tr. 76-83. A GAF score was assessed at 40.[3] Tr. 83.  An initial

psychiatric evaluation was administered on January 21, 2005 by Mathew Joseph,

M.D. of Crouse Hospital. Tr. 137-139.  Plaintiff reported feeling anxious, having

difficulty sleeping, and racing thoughts. Tr. 137.  Plaintiff was assessed with: (1)

insomnia NOS; (2) alcohol and cocaine dependence; and (3) anxiety disorder

---

[3] The DSM-IV-TR on page 34 indicates that a GAF score of 41-50 denotes serious
symptoms or any serious impairment in social, occupational, or school functioning.

NOS. Tr. 139.  A Bio-Psycho-Social Evaluation was administered on January 21,
2005 at Crouse Chemical Dependency Treatment Services. Tr. 104-115.
Depressive symptoms were identified as depressed mood, insomnia, appetite
change, weight gain, and social withdrawal, and judgment was poor. Tr. 110.
GAF score was assessed at 38. Tr. 111.  Education was reported by plaintiff to be
limited to the ninth grade with special education services. Tr. 120.  On February
21, 2005, plaintiff was discharged from Crouse Chemical Dependency Treatment
Services following admission on January 21, 2005 and successfully completing
the program. Tr. 98-100. Plaintiff had sleep difficulties in which he was prescribed
Trazodone. Tr. 99. GAF score upon discharge was 40. Tr. 100.

Plaintiff was admitted to St. Joseph's Hospital Health Center
Comprehensive Psychiatric Emergency Program ("CPEP") on January 16, 2008.
Tr. 188. A prior CPEP admission was noted prior on December 27, 2007 for
treatment of depressive disorder. Tr. 195. Plaintiff reported problems coping,
suicidal ideation, and depressive symptoms including sleep and appetite problems,
loss of energy, difficulty concentrating, and feelings of hopelessness,
worthlessness, and excessive guilt. Tr. 192, 195.  Mood was low and depressed,
and affect was depressed and flat. Tr. 192, 195.  Perceptual disturbance was noted
for plaintiff talking to himself. Tr. 192.  Plaintiff was diagnosed by David Frey,

7

M.D. with depressive disorder. Tr. 193.  Plaintiff reported that he did not have

Medicaid and was awaiting a pending application. Tr. 301.

One day later, plaintiff felt better, tolerated his medication (Paxil) well, and

was able to sleep without his medication (Trazodone).   At that time, plaintiff was

alert, oriented, pleasant, and cooperative.  He was well dressed and groomed.  His

psychomotor activity was normal. He had linear and logical speech and thoughts.

He smiled frequently and appropriately.  He was not psychotic and his judgment

was intact.  His insight was partial regarding substance abuse.  He had intact

cognition and attention.  Plaintiff had a GAF of 58 at discharge. Tr. 189.

A Bio-Psycho-Social assessment was completed at Central New York

Services ("CNY Services") on February 28, 2008. Tr. 211-19.  Plaintiff reported a

December 27-30, 2008 and a January 16, 2008 hospitalization at St. Joseph's

Hospital's CPEP. Tr. 211, 217-18.  Plaintiff's appearance was somewhat unkempt,

unclean, and with poor personal hygiene. Tr. 212.  He was restless and fidgety. Tr.

212. His mood was depressed, sad, and anxious. Tr. 212. He was distracted,

unfocused, and unorganized. Tr. 213.  He alleged visual hallucinations and

auditory hallucinations of voices calling his name. Tr. 213.  His attention and

concentration were impaired. Tr. 213.  His immediate and recent recall were

somewhat impaired. Tr. 213.  His intelligence was estimated at average to below

average. Tr. 218.  His insight and judgment were poor. Tr. 218.  He was diagnosed with major depression with psychotic features and a GAF of 40. Tr. 219.

Plaintiff reported dropping out in the seventh grade due to inability to comprehend what was going on in school and he continued to have poor reading and writing. Tr. 217. Plaintiff had poor appetite. Tr. 217. Intelligence was estimated at average to below average. Tr. 218. Diagnoses included: (1) major depression with psychotic features; and (2) GAF score of 40. Tr. 219.  Plaintiff was treated at CNY Services on March 26, 2008 for being depressed and psychotic. Tr. 209. Paula Zebrowski, M.D. noted that plaintiff reported that he had not used drugs for over a month and continued to have symptoms of depression and hearing voices. Tr. 209.  Medications included Zoloft and Seroquel. Tr. 209. Plaintiff was admitted into Continuing Day Treatment ("CDT"). Tr. 209. Appearance was casual. Tr. 210. Mood was depressed and anxious. Tr. 210. Thought content contained auditory hallucinations. Tr. 210. Diagnoses included: (1) major depression, recurrent with psychotic features; and (2) GAF score of 40. Tr. 210.

On April 23, 2008, during the time frame relevant to the case at bar, plaintiff stated that he hurt his back years ago and received treatment for this, but that his back now only occasionally bothered him and he had no back problems.  Plaintiff

took no pain medication and had no current medical treatment for this former condition.  He was able to perform all aspects of his activities of daily living without pain. Tr. 62.

Non-examining state agency medical reviewer, M. Morog ("Morog"), completed a psychiatric review technique form and mental residual functional capacity assessment form on April 25, 2008. Tr. 224-241.  Morog opined moderate limitations in the abilities to: (1) maintain concentration, persistence or pace; (2) understand and remember detailed instructions; (3) carry out detailed instructions; (4) perform activities within a schedule, maintain regular attendance, and be punctual without customary tolerances; (5) work in coordination with or proximity to others without being distracted by them; (6) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (7) accept instructions and respond appropriately to criticism from supervisors; and (8) maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness. Tr. 234, 238-39.

Plaintiff was treated by James Donovan, M.D. of CNY services on May 2, May 21, July 30, October 15, December 24, 2008, and January 14, 2009. Tr. 342. On June 2, 2008, Brenda Ocampo, RN, BC wrote a correspondence to Onondaga

10

County Department of Social Services indicating that plaintiff was admitted to the

CDT program on March 26, 2008 for treatment of major depression with psychotic

features. Tr. 242.  Treatment was estimated to last 6 to 18 months, and medications

included Zoloft and Abilify. Tr. 242.  Plaintiff treated at CNY Services on

December 17, 2008, and Dr. Donovan noted a seizure. Tr. 340. Medication was

noted for Abilify and Seroquel. Tr. 340. Appearance was casual. Tr. 341. There

was no change in diagnoses. Tr. 341.

At the August 6, 2009 hearing, plaintiff testified his back hurt him for the

last couple of years and that he had been going to the hospital "for that for a

couple of years now." Tr. 354.  Plaintiff testified that on some days it was hard for

him to arise from a chair and then straighten himself up. Tr. 354.  Plaintiff alleged

that his depression and psychotic features caused racing thoughts, seeing things

that were not there, difficulty socializing, and improper eating and hygiene. Tr.

354, 358-60. He alleged he experienced these on a daily basis. Tr. 354.

## II.    Discussion

Plaintiff submits that the ALJ failed to develop the record; failed to comply

with SSR 96-8p by failing to make a function by function analysis; failed to follow

the treating physician's rule; failed to apply the appropriate legal standards in

assessing plaintiff's credibility; erred in determining that plaintiff could return to

his past relevant work as a dishwasher/cashier when it was unclear that he had past

relevant work; and failed to use a vocational expert.  The Commissioner argues

that the ALJ's decision, that plaintiff was not disabled, is supported by substantial

evidence and therefore must be affirmed.

### A.    Standard of Review

This court does not review a final decision of the Commissioner de novo,

but instead "must determine whether the correct legal standards were applied and

whether substantial evidence supports the decision." Butts v. Barnhart, 388 F.3d

377, 384 (2d Cir. 2004) (internal citations omitted).  See also Halloran v. Barnhart,

362 F.3d 28, 31 (2d Cir. 2004);  Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir.

1998).  "Substantial evidence" is evidence that amounts to "more than a mere

scintilla.  It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion." Halloran, 362 F.3d at 31 (quoting Richardson

v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)).  "An ALJ must set forth the

crucial factors justifying his findings with sufficient specificity to allow a court to

determine whether substantial evidence supports the decision." Gravel v.

Barnhart, 360 F.Supp.2d 442, 444-45 (N.D.N.Y. 2005) (citing Ferraris v. Heckler,

728 F.2d 582, 587 (2d Cir. 1984)).   When reviewing a determination by the

Commissioner, a district court, in its discretion, "shall have the power to enter,

12

upon the pleadings and transcript of record, a judgment affirming, modifying, or

reversing the decision of the Commissioner of Social Security, with or without

remanding the cause for a rehearing."  42 U.S.C. § 405(g).

### B.    Disability Defined

An individual is considered disabled for purposes of his or her eligibility for

Social Security Disability if he or she is unable to

> engage in any substantial gainful activity by reason of
> any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

The Commissioner may deem an individual applicant for Social Security

Disability to be disabled

> only if his physical or mental impairment or impairments
> are of such severity that he is not only unable to do his
> previous work but cannot, considering his age,
> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or whether
> a specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Social Security Administration regulations set forth a five-step sequential

evaluation process, by which the Commissioner is to determine whether an

applicant for Social Security Disability is disabled pursuant to the aforementioned

statutory definition.  See 20 C.F.R. § 404.1520.  The Second Circuit Court of

Appeals summarizes this process as follows:

> The first step of this process requires the Secretary to
> determine whether the claimant is presently employed. If
> the claimant is not employed, the Secretary then
> determines whether the claimant has a "severe
> impairment" that limits [his] capacity to work. If the
> claimant has such an impairment, the Secretary next
> considers whether the claimant has an impairment that is
> listed in Appendix 1 of the regulations. When the
> claimant has such an impairment, the Secretary will find
> the claimant disabled. However, if the claimant does not
> have a listed impairment, the Secretary must determine,
> under the fourth step, whether the claimant possesses the
> residual functional capacity[4] to perform [his] past
> relevant work. Finally, if the claimant is unable to
> perform [his] past relevant work, the Secretary
> determines whether the claimant is capable of
> performing any other work. If the claimant satisfies [his]
> burden of proving the requirements in the first four steps,
> the burden then shifts to the Secretary to prove in the
> fifth step that the claimant is capable of working.

Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d
41, 46 (2d Cir. 1996)).

---

[4]     Residual functional capacity ("RFC") refers to what a claimant can still do in a
work setting despite any physical and/or mental limitations caused by his or her impairments and
any related symptoms, such as pain.  An ALJ must assess the patient's RFC based on all the
relevant evidence in the case record. See 20 C.F.R. § 404.1545 (a)(1).

The fifth step "requires the [ALJ] to consider the so-called vocational factors (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy." Quezada v. Barnhart, 2007 WL 1723615 (S.D.N.Y. 2007) (internal quotations omitted).

A person is deemed disabled if he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. Substantial work activity is defined as "work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before."  Gainful work activity is defined as "work activity that you do for pay or profit.  Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(a-b) (West 2009).

### C.    Material Effect of Substance Abuse

The Social Security Act, as amended in 1996,  states that "an individual shall not be considered to be disabled ... if alcoholism or drug addiction would ...

be a contributing factor material to the Commissioner's determination that the individual is disabled." Mims v. Apfel, 182 F.3d 900 (2d Cir. 1999) (citing 42 U.S.C. § 1382c(a)(3)(J) (Supp. II 1996)).  "In determining whether alcohol or substance abuse is material to the determination of disability, the key factor is whether the Commissioner would still find the claimant disabled if [he] stopped using the alcohol or substance." Hernandez v. Astrue, ---F.Supp.2d ----, 2011 WL 1630847 at * 8 (E.D.N.Y. 2011) (citing 20 C.F.R. §§ 404.1535(b)(1); 416.935(b)(1)).  "Under the regulations, where there is evidence of alcoholism or drug use, the Commissioner must determine which physical and mental limitations would remain in the absence of substance abuse and whether these limitations would be disabling on their own." Id., citing  20 C.F.R. §§ 404.1535(b)(2); 416.935(b)(2).  "If the remaining limitations would still be disabling to the claimant on their own, then the claimant is entitled to ... SSD benefits.  If the remaining limitations would not be disabling on their own, then the alcohol or substance abuse is considered material; and the claimant would not be eligible for benefits." Id., (citing  20 C.F.R. §§ 404.1535(b)(2)(ii); 416.935(b)(2)(ii); 404.1535(b)(2)(i); 416.935(b)(2)(i)).

   **D.    Analysis**

   In the case at bar, the ALJ applied the a five-step sequential evaluation

16

process and determined that plaintiff (1) meets the insured status requirement of the Social Security Act through December 31, 2010; (2) has not engaged in substantial gainful activity since December 1, 2007 (20 CFR 404.1571 et seq. and 416.971 et seq.); (3) has the following severe impairments: alcohol and drug dependence, and depression (20 CFR §§ 404.1520(c) and 416.920(c)); (4) does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)). At Step 5, the ALJ held that the plaintiff retains the physical residual functional capacity to perform work at all exertion levels with the exception that, due to his continued alcohol and drug use, he must avoid concentrated exposure to hazards. The claimant also retains the mental residual functional capacity to understand, carry out, and remember simple instructions; respond appropriately to supervision, co-workers and usual work situations; and deal with changes in a routine work setting. Tr. 19.

Plaintiff first submits that the ALJ failed to develop the record, stating that the administrative transcript indicates that there was outstanding evidence from CNY Services and CPEP.  Plaintiff argues that the ALJ relied on a void in the record in determining that plaintiff was not disabled.  In addition, plaintiff claims

that the record does not reflect that the ALJ requested the missing treatment records.  Further, he argues, the ALJ failed to request a consultative examination in spite of evidence of a psychiatric impairment. Doc. No. 10, p. 11.  The Commissioner argues that completely contrary to plaintiff's assertion, the Disability Worksheet at Tr. 243-48 indicates the agency requested medical records from these sources.  Moreover, the Commissioner argues, if plaintiff, who was represented, was aware of the existence of these records, the regulations compelled him to present them to support his case, which he apparently did not do, "if these records exist at all." Doc. No. 15, p. 12.  "Similarly, a consultative examination may be purchased when the evidence as a whole, both medical and non-medical, is not sufficient to support a decision. 20 C.F.R. §§ 404.1519a, 416.919a. Here, the record contained a complete history of [p]laintiff's physical and mental health treatment history. It also contained the opinion of a state agency psychologist who considered the medical evidence from [p]laintiff's treating source (Tr. 224-41). Therefore, the current medical record was sufficient to make and support the decision." Id.  The court concurs, and finds that the ALJ did not err by not developing the record further when the record was sufficient to make and support a decision that plaintiff was not disabled.   Here, plaintiff was not found to have any severe physical impairments, and there is substantial evidence

18

in the record indicating that his mental impairments were intertwined with his alcohol and drug abuse.

Next, plaintiff argues that the ALJ failed to comply with SSR 96-8p by failing to make a function by function analysis of plaintiff's mental ability to work, and failed to follow the treating physician rule[5] by specifically considering and adopting Morog's April 25, 2008 function by function analysis of assessment of plaintiff's mental ability to work. Tr. 20, 224-41.

The Commissioner argues that "it is plaintiff's burden to prove that his RFC is more restricted than that found by the ALJ, and [p]laintiff has not met this burden." Doc. No. 15, p. 13. In addition, the Commissioner argues that contrary to plaintiff's argument that state agency doctor's opinions are not entitled to controlling weight, "the regulations state that state agency medical consultants are highly qualified individuals who are experts in the evaluation of medical issues in disability claims under the Act, and their opinions constitute expert opinion evidence which can be given great weight where, as here, it is supported by

---

[5]According to the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); see also Green-Younger v. Barnhart, 2003 WL 21545097 at *6 (2d Cir.2003); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000). "Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it 'extra weight' under certain circumstances." Comstock v. Astrue, 2009 WL 116975 at * 4 (N.D.N.Y. 2009).

medical evidence of record. 20 C.F.R. §§ 404.1527(f), 416.927(f); Social Security Ruling 96-6p, 1996 WL 374180. The opinions of non-examining sources may even override treating source's opinions provided they are, as here, supported by evidence of record." Doc. No. 15, p. 14.  The Commissioner also argues that Morog cited to evidence from CNY, one of plaintiff's treating sources.

Here, the record does not indicate that plaintiff had any severe physical impairments at the time in question, thus negating the ALJ's obligation to make a function by function assessment of the plaintiff's ability to "sit, stand, walk, lift, carry, push, pull, reach, handle, stoop, or crouch." Dillingham v. Astrue, 2010 WL 3909630 at * 11 (N.D.N.Y. 2010).  The ALJ considered and adopted Morog's function by function analysis of plaintiff's mental ability to work, which was based on plaintiff's medical evidence from his treating sources, contained in the record.  The court finds that the ALJ properly relied on Morog's analysis because it was well-supported by the medical evidence in the record, and thus the ALJ did not fail to follow the treating physician rule.

Plaintiff next argues that the ALJ failed to apply the appropriate legal standards in assessing plaintiff's credibility.  Plaintiff asserts that the ALJ used plaintiff's history of drug and alcohol abuse to undermine the plaintiff's credibility.  The ALJ held that plaintiff's subjective complaints far exceed the

20

objective evidence provided from clinical examinations and medical imaging. The ALJ noted that there was no evidence of plaintiff's alleged learning disability. The ALJ also found that plaintiff's allegations were not supported by his work history and criminal convictions. Plaintiff was found to have demonstrated that he is capable of working at substantial gainful activity despite actively using drugs and alcohol. The only reason plaintiff stopped working as a cashier/dishwasher at a warehouse cafeteria, testifying that it was a job he enjoyed, was because he was fired for stealing stamps. The ALJ found that all of the above suggests that plaintiff's ability to work was greater than alleged. The court does not concur with plaintiff's allegation that the ALJ was biased against plaintiff due to his substance abuse, but rather, the ALJ held that plaintiff was able to work in spite of plaintiff's consumption of those substances.

Finally, plaintiff argues that the ALJ erred in determining that plaintiff could return to his past relevant work as a dishwasher/cashier when it was unclear that he had past relevant work, and that the ALJ failed to use a vocational expert. The court finds this argument without merit. Plaintiff worked from 2000 to 2003 in that job, and the court affirms the ALJ's judgment that the plaintiff's job reached the level of substantial gainful activity based on the guidelines set forth supra. In regard to the use of a vocational expert, the court notes that plaintiff was

21

found to have the RFC to perform unskilled work at any exertional level, and his

non-exertional impairments only required that he have no concentrated exposure

to hazards.  The Commissioner argues, and the court concurs, that this non-

exertional limitation did not significantly erode the occupational base of unskilled

work, negating the need for expert testimony from a vocational expert.

 The court notes that the ALJ did not reach the issue of the material effect of

substance abuse, as set forth supra, finding on other grounds that plaintiff was not

disabled.  In other words, the ALJ did not find any physical or mental impairments

that would lead to a finding of disability.  Instead, he found that plaintiff's

continued drug and alcohol use caused an inability to tolerate concentrated

exposure to hazards, e.g., unprotected heights. Tr. 22.  However, the court includes

the issue of the material effect of substance abuse here, not to substitute its

opinion for that of the ALJ, but to reinforce the premise that substantial evidence

supports the ALJ's finding that plaintiff was not disabled in the relevant period of

time at issue in this case.  The court has reviewed plaintiff's various complaints of,

and treatment for, depression, and invariably, plaintiff admitted to abusing drugs

and or alcohol in the few days prior to his complaint of depression.   At an initial

psychiatric evaluation at Crouse Hospital dated February 1, 2005, plaintiff

reported that he was in fact depressed about his chemical use. Tr. 153.  Even if, for

the sake of argument, the ALJ erred in finding no physical or mental impairments rising to the level of a disability, the court finds that where, as here, there is significant evidence of alcoholism or drug use, the Commissioner would have to determine whether physical and mental limitations, if any, would remain in the absence of substance abuse and whether these limitations would be disabling on their own.  The court notes that while plaintiff reported that he was suffering from depression at the hearing before the ALJ, he also reported that he had relapsed and used drugs and alcohol a few days before the hearing, and had a previous relapse a couple of weeks before the hearing . Tr. 351.  Based on the record before it, and affirming the ALJ's determination that plaintiff  had no physical limitations, this court suggests that any remaining nonexertional imitations would not be disabling on their own, absent plaintiff's drug and alcohol abuse.  The court opines that, arguendo,  even if the ALJ had found that plaintiff's depression rose to the level of a mental impairment, plaintiff's alcohol and drug use would be a contributing factor material to the Commissioner's determination that the plaintiff was not disabled during the relevant time period.

Based on the entirety of the information set forth above,  the court finds that the ALJ consulted the appropriate guidelines and that substantial evidence supports a finding that plaintiff was not disabled for the period of time beginning

December 1, 2007 through September 11, 2009.

## III.   Conclusion

Accordingly, for the reasons set forth above, plaintiff's motion for judgment on the pleadings (Doc. No. 10) is DENIED, and the Commissioner's motion for judgment on the pleadings (Doc. No. 15) is hereby GRANTED.  The Clerk is instructed to close this case.

SO ORDERED.

June 13, 2012

_____

Neal P. McCurn
Senior  U.S. District Judge

24